**KAZEROUNI LAW GROUP, APC**
David J. McGlothlin, Esq. (253265)
david@kazlg.com
Mona Amini, Esq. (296829)
mona@kazlg.com
Ashley LaPointe, Esq. (365017)
ashley@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff*,
Elias Rantisi

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

ELIAS RANTISI, individually and on behalf of all others similarly situated,

Plaintiff,

v.

EMPIRE AUTO PROTECT, LLC

Defendant.

Case No.:

**<u>CLASS ACTION</u>**

**COMPLAINT FOR DAMAGES FOR VIOLATION OF:**

1. **THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, ET SEQ.**

**JURY TRIAL DEMANDED**

## INTRODUCTION

1. Plaintiff Elias Rantisi ("Mr. Rantisi" or "Plaintiff"), individually and on behalf of the proposed Class defined below, brings this class action lawsuit challenging the unlawful actions of Empire Auto Protect, LLC ("Empire Auto" or "Defendant"). Defendant negligently, knowingly and/or willfully placed unsolicited automated text messages to Plaintiff and the putative class on their respective cellular phones after they requested not to receive telemarketing text messages from Defendant or on their behalf, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*., ("TCPA"), thereby invading the privacy of Plaintiff and the putative Class members.

2. Plaintiff seeks injunctive relief prohibiting such conduct in the future and monetary relief for all persons injured by Defendant's unlawful conduct.

3. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

4. Defendant sent numerous automated text messages to Plaintiff's cellular telephone for the purpose of soliciting business from Plaintiff after Plaintiff requested Defendant to "stop," in violation of the TCPA 47 U.S.C. §§ 227, et seq.

5. The TCPA was enacted to protect consumers from unsolicited and unwanted telephone calls exactly like those alleged in this case.

6. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

## NATURE OF THE ACTION

7. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy…." Telephone Consumer



KAZEROUNI LAW GROUP, APC

Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

8. The TCPA was designed to prevent calls and messages like the one described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

9. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243, § 11. Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12

10. The Federal Trade Commission ("FCC") is charged with the authority to issue regulations implementing the TCPA. According to findings by the FCC, automated calls and text messages are prohibited under the TCPA because receiving them is a greater invasion of privacy and nuisance compared to live solicitation calls. The FCC has also acknowledged that wireless customers are charged for any incoming calls and text messages.

11. In 2015, the FCC noted, "[m]onth after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the Commission." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 1 (2015).



KAZEROUNI LAW GROUP, APC

12. With respect to misdialed or wrong-number calls, the FCC recently clarified that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id.* Thus, any second call placed to a wrong number violates the TCPA.

13. Text messages are calls and are subject to the TCPA. See, e.g., *Campbell- Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

14. 47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls—of which Defendant's texts to Plaintiff are—that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party . . . ."

15. 47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

16. Although a caller may obtain prior express consent from a consumer,

KAZEROUNI LAW GROUP, APC

prior express consent may nevertheless be revoked.

17. The right to revocation is consistent with the common law principle that consent is revocable and honors the purpose of the TPCA.

18. The TCPA provides for damages in the amount of $500 for each negligent violation and treble damages of $1,500 for each knowing or willful violation. *See* 47 U.S.C. § 227(c)(5).

19. The transmission of an unsolicited calls and text messages to a cellular device is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion.

**JURISDICTION AND VENUE**

20. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case arises out of violation of federal law. 47 U.S.C § 227(c).

21. Personal jurisdiction is established because Defendant conducts business in the State of California. At all times relevant herein, Defendant conducted business in the State of California, and within this judicial district.

22. Personal jurisdiction and venue are proper in the Central District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (1) Plaintiff resides within this judicial district; (2) the conduct complained of herein occurred within this judicial district; and (3) Defendant conducted business within this judicial district at all times relevant.

23. Specifically, Defendant invaded Plaintiff's privacy by contacting Plaintiff on his cellular telephone in violation of the TCPA while Plaintiff resided in Rancho Cucamonga, California, which is within this judicial district.

**PARTIES**

24. Plaintiff is an individual residing in the County of San Bernardino, State of California, and is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

KAZEROUNI LAW GROUP, APC

25. Defendant, is, and at all times mentioned herein was, a corporation organized under the laws of the State of Delaware, with a principal place of business or headquarters located at 8 The Green, Suite 11230, Dover, Delaware 19901. Plaintiff alleges that at all times relevant herein Defendant conducted business in the State of California, and within this judicial district. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

26. Upon information and belief, Defendant is a nation-wide provider and marketer of vehicle service contracts, extended automobile warranty products, and roadside assistance services.

27. Whenever in this Complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

KAZEROUNI LAW GROUP, APC

## FACTUAL ALLEGATIONS

28. At all times relevant, Plaintiff is an individual residing within the State of California. Plaintiff is informed and believes, and thereon alleges, that at all times relevant, Defendant conducted business in the State of California.

29. In Defendant's overzealous attempts to market its products and/or services, Defendant willfully or knowingly called Plaintiff and sent unsolicited text messages to Plaintiff and similarly situated Class members who had requested not to receive telemarketing text messages from Defendant or on their behalf.

30. Through this conduct, Defendant has invaded the privacy of Plaintiff and the members of the Class defined below.

31. At all relevant times, Plaintiff was assigned, and was the owner of, a cellular telephone number of ending in 9016 ("Cell Phone"). Plaintiff is the sole user

and/or subscriber of his Cell Phone.[1]

32. On or around December 11, 2025, Plaintiff called Defendant's telephone number (909) 308-4544 to obtain a quote for automobile insurance. Following that conversation, Plaintiff decided not to purchase automobile insurance from Defendant.

33. Later that same day, Defendant called Plaintiff to follow-up regarding the automobile insurance quote. During that call, Plaintiff informed Defendant that he was not interested in Defendant's services and expressly requested Defendant cease contacting him.

34. Despite Plaintiff's request not to receive further communications from Defendant, Plaintiff continued to receive numerous unsolicited automated text message solicitations to his Cell Phone from Defendant.

35. Indeed, on or about December 16, 2025, at approximately 1:16 p.m., Defendant sent an automated text solicitation to Plaintiff's Cell Phone from telephone number (323) 621-3256. The text message identified the sender as "Empire Auto Protect" and, in pertinent part, directed Plaintiff to call a telephone number and "USE CODE: HOHO69" to obtain a promotional offer for Defendant's services.

36. On or about December 23, 2025, at approximately 12:27 p.m., Defendant sent another automated text solicitation to Plaintiff's Cell Phone from telephone number (312) 313-1261. The text message identified the sender as "Empire Auto Protect" and, in pertinent part, directed Plaintiff to call a telephone number and "USE CODE: XMAS69" to obtain a promotional offer for Defendant's services.

---

[1] According to the Federal Communications Commission's website, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list, accessed on June 3, 2021: Placing telemarketing calls to wireless phones is - and always has been - illegal in most cases.



KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

37. On or about January 2, 2026, at approximately 11:16 a.m., Defendant sent an automated text solicitation to Plaintiff's Cell Phone from telephone number (310) 845-4162. The text message identified the sender as "Empire Auto Protect" and, in pertinent part, directed Plaintiff to call a telephone number and "USE CODE: EMP2026" to obtain a promotional offer for Defendant's services.

38. On or about January 6, 2026, at approximately 12:59 p.m., Defendant sent an automated text solicitation to Plaintiff's Cell Phone from telephone number (310) 845-4162. The text message identified the sender as "Empire Auto Protect" and, in pertinent part, directed Plaintiff to call a telephone number and "USE CODE: MEGA69" to obtain a promotional offer for Defendant's services.

39. On or about January 9, 2026, at approximately 11:41 a.m., Defendant sent an automated text solicitation to Plaintiff's Cell Phone from telephone number (323) 553-7390. The text message identified the sender as "Empire Auto Protect" and, in pertinent part, directed Plaintiff to call a telephone number and "USE CODE: MEGA49" to obtain a promotional offer for Defendant's services.

40. Plaintiff immediately replied "[h]ow did u get my name stop calling me and sending me messages."

41. By sending this response to Defendant's text message, Plaintiff again expressly revoked any consent that Defendant may have relied upon to contact him with such telemarketing text messages.

42. Despite Plaintiff's explicit request that Defendant cease such communications, Defendant continued to send Plaintiff marketing text messages.

43. On or about January 13, 2026, at approximately 12:03 p.m., Defendant sent an automated text solicitation to Plaintiff's Cell Phone from telephone number (323) 553-7390. The text message identified the sender as "Empire Auto Protect" and, in pertinent part, directed Plaintiff to call a telephone number and "USE CODE: MONSTER69" to obtain a promotional offer for Defendant's services.

44. On or about January 16, 2026, at approximately 11:07 a.m., Defendant

sent an automated text solicitation to Plaintiff's Cell Phone from telephone number (323) 553-7390. The text message identified the sender as "Empire Auto Protect" and, in pertinent part, directed Plaintiff to call a telephone number and "USE CODE: WINTER49" to obtain a promotional offer for Defendant's services.

45. On or about January 23, 2026, at approximately 11:51 a.m., Defendant sent an automated text solicitation to Plaintiff's Cell Phone from telephone number (312) 419-3138. The text message identified the sender as "Empire Auto Protect" and, in pertinent part, directed Plaintiff to call a telephone number and "USE CODE: MEGA49" to obtain a promotional offer for Defendant's services.

46. Plaintiff continued to grow increasingly frustrated with Defendant's repeated unsolicited marketing text messages after Plaintiff's prior requests for Defendant to cease further communication.

47. Plaintiff immediately responded to Defendant's text message, reaffirming his prior request, stating: "I already said stop messaging me and calling me."

48. By sending this response to Defendant's text message, Plaintiff once again made it clear he did not want to receive any further communications from Defendant and revoked any type of consent that Defendant may have relied upon to contact him with such telemarketing text messages.

49. Despite Plaintiff reasonably expressing his desire not to be contacted by Defendant in the future with such telemarketing text messages, Defendant failed to honor Plaintiff's requests and continued to send telemarketing text message communications to Plaintiff's Cell Phone.

50. On or about January 30, 2026, at approximately 12:14 p.m., Defendant sent an automated text solicitation to Plaintiff's Cell Phone from telephone number (872) 278-3643. The text message identified the sender as "Empire Auto Protect" and, in pertinent part, directed Plaintiff to call a telephone number and "USE CODE: LASTCHANCE49" to obtain a promotional offer for Defendant's services.

KAZEROUNI LAW GROUP, APC

51. On or about February 20, 2026, at approximately 11:36 a.m., Defendant sent an automated text solicitation to Plaintiff's Cell Phone from telephone number (424) 380-4782. The text message identified the sender as "Empire Auto Protect" and, in pertinent part, directed Plaintiff to call a telephone number and "USE CODE: MEGA49" to obtain a promotional offer for Defendant's services.

52. On or about April 3, 2026, at approximately 12:51 p.m., Defendant sent an automated text solicitation to Plaintiff's Cell Phone from telephone number (772) 646-9567. The text message identified the sender as "Empire Auto Protect" and, in pertinent part, directed Plaintiff to call a telephone number and "USE CODE: GF49" to obtain a promotional offer for Defendant's services.

53. On or about April 10, 2026, Defendant placed a call to Plaintiff's Cell Phone from telephone number (909) 308-4544 which Plaintiff did not request or consent to receive.

54. When Plaintiff answered the call, he again requested Defendant "stop calling." In response, Defendant's representative stated "ma'am, ma'am, calm down ma'am." Plaintiff, who is male, became frustrated by Defendant's agent repeatedly addressing him as "ma'am" while disregarding his request to stop calling, and Plaintiff terminated the call.

55. Immediately thereafter, Defendant placed another call to Plaintiff. Upon information and belief, this call, like the preceding calls, was made for unsolicited marketing and/or solicitation purposes.

56. Defendant sent numerous similar text message solicitations to Plaintiff's Cell Phone without Plaintiff's consent throughout May 2026, including on or about May 8, 2026; May 15, 2026; May 22, 2026; May 29, 2026; June 5, 2026; and June 12, 2026.

57. Upon information and belief, each of the text messages from Defendant were to promote or sell Plaintiff goods or services because Defendant's messages advertised sales for auto insurance, provided Plaintiff promotional codes, urged



KAZEROUNI LAW GROUP, APC

Plaintiff to "call now" to use such promotional codes, and contained Defendant's name and a phone number to directly contact Defendant.

58. Defendant does not adhere to a valid internal Do Not Call Policy and does not take adequate steps to ensure that any entities making the calls or sending text messages on their behalf adhere to an internal Do Not Call policy.

59. Despite Plaintiff's requests to Defendant to cease such text messages, Defendant persisted to bombard Plaintiff with unsolicited telemarketing text messages.

60. After Plaintiff requested Defendant to cease such text messages, Plaintiff received, at a minimum, fifteen (15) unsolicited telemarketing text messages.

61. Based on Plaintiff's own personal experience, either Defendant failed to institute policies as required by the TCPA prior to the initiation of telephone solicitations, or alternatively to the extent that Defendant had internal do-not-call policies, they do not adhere to any such policies if any exist.

62. The text messages Defendant sent to Plaintiff consisted of a pre-written template of impersonal text and was identical to text messages Defendant sent to other consumers in the Class.

63. Such text messages constitute telephone solicitations pursuant to 47 C.F.R. § 64.1200(c), as they were an attempt to promote or sell Defendant's products or services.

64. Plaintiff is informed and believes and here upon alleges, that these text messages were made by Defendant or on Defendant's behalf by Defendant's agent, with Defendant's permission, knowledge, control and for Defendant's benefit.

65. Through Defendant's aforementioned conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

66. Defendant's text messages invaded the privacy of Plaintiff and other



KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

similarly situated Class members and forced them to live without the full utility of their cellular phones by occupying their telephone with one or more unwanted text messages, consuming their cellular phones' storage, causing nuisance and lost time.

67. The telephone number Defendant or its agent called was assigned to a cellular telephone service for which Plaintiff incurs a charge for a cellular telephone service pursuant to 47 U.S.C. § 227(b)(1).

68. The text messages to Plaintiff were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

69. Plaintiff received numerous automated text message solicitations from Defendant after Plaintiff used a reasonable method to clearly express a desire not to receive further text messages from Defendant.

70. Plaintiff did not have a personal relationship with Defendant at any point in time.

71. Upon information and belief, Defendant placed substantially similar, if not identical, unsolicited text messages *en masse* to Plaintiff and thousands of other consumers.

72. Upon information and belief, Defendant did not send the text message solicitations to Plaintiff in error.

73. Upon information and belief, at all relevant times, Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5), including the internal do-not call provision in 47 C.F.R. § 64.1200(c)-(d).

74. Each of the above unsolicited telephonic communications by Defendant and/or their agents violated 47 U.S.C. § 227(c)(5), including the internal do-not call provision in 47 C.F.R. § 64.1200(c)-(d).

75. Upon information and belief, Defendant continued sending text messages to Plaintiff and other consumers after they requested that Defendant cease contacting them, as a result of deficiencies in the sufficiency, implementation, or

KAZEROUNI LAW GROUP, APC

enforcement of Defendant's internal do- not-call policies and procedures, or the absence of such policies altogether.

76. Defendant's failure to record and honor both Plaintiff's requests evidences Defendant's failure to implement proper procedures prior to the initiation of the telephone solicitations at issue.

77. Even assuming Defendant did have the necessary policies in place prior to the initiation of the telephone solicitations at issue, the repeated failures to adhere to that policy demonstrates that company policy was rendered ineffective by lack of compliance. *See Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 141 (D. Conn. 2016), aff'd, 686 F. App'x 48 (2d Cir. 2017), citing *In the Matter of Dynasty Mortg., L.L.C.*, 22 F.C.C. Rcd. 9453, 9466 (2007).

78. Receiving Defendant's unauthorized text message solicitations drained Plaintiff's cellular phone battery and caused Plaintiff additional electricity expenses and wear and tear on his cell phone and battery.

79. Through this conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

80. Because Plaintiff is alerted when a call or text message is made to Plaintiff's cellular telephone, the unsolicited telephone solicitations that Defendant transmitted to Plaintiff's phone invaded Plaintiff's privacy, was a nuisance, and distracted and aggravated Plaintiff upon receipt.

81. Plaintiff was personally affected because Plaintiff was frustrated, distressed, disturbed, and felt harassed that Defendant and/or their agents continued to send unsolicited and unauthorized automated text message solicitations to Plaintiff's Cell Phone, without Plaintiff's consent, and after Plaintiff had expressly revoked any prior-existing consent to receive such text messages.

82. Defendant's telemarketing communications forced Plaintiff to be

KAZEROUNI LAW GROUP, APC

deprived of the privacy and utility of his cellular phone by forcing Plaintiff to ignore or reject Defendant's disruptive messages, dismiss alerts, and/or silence his cellular phone as a result of Defendant's incessant text messages.

83. The TCPA was intended to give individuals control over how and where they receive telephonic communications. When Defendant sent such automated text message solicitations to Plaintiff without his consent, Defendant failed to address or respect the limitations imposed by the TCPA. In doing so, Defendant invaded Plaintiff's and the Class members' privacy and violated the spirit and intent behind the TCPA.

84. Defendant's violations caused Plaintiffs to suffer real and concrete harm in the form of intrusion and distraction, wasted time, wasted cellular phone battery, loss of cellular phone use, and natural and foreseeable stress and frustration in connection with the foregoing, all of which the TCPA was designed to prevent. *See, e.g., Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 U.S. Dist. LEXIS 84972, at *8 (N.D.W. Va. June 30, 2016) ("[S]uch calls also cause intangible injuries, regardless of whether the consumer has a prepaid cell phone or a plan with a limited number of minutes. The main types of intangible harm that unlawful calls cause are (1) invasion of privacy, (2) intrusion upon and occupation of the capacity of the consumer's cell phone, and (3) wasting the consumer's time or causing the risk of personal injury due to interruption and distraction.").

85. Through the aforementioned conduct, Defendant repeatedly violated the TCPA, 47 U.S.C. §§ 227, et seq., numerous times.

//

//

//

//

//

//

KAZEROUNI LAW GROUP, APC

## CLASS ACTION ALLEGATIONS

86. Plaintiff brings this action pursuant to Rule 23(b)(2) and/or Rule 23(b)(3) of Federal Rules of Civil Procedure individually and on behalf of the following Class (the "Class"), which is defined as follows:

**Internal Do Not Call Class:**

All persons within the United States to whom Defendant and/or a third party acting on Defendant's behalf sent a text message solicitation within the four years prior to the filing of this Complaint, after such person reasonably conveyed to Defendant a desire to not receive further text messages.

87. Excluded from the Class are Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

88. Plaintiff reserves the right to redefine the Class and to add subclasses as appropriate based on discovery and specific theories of liability.

89. Further, Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class members via their telephones, whether cellular telephones or otherwise, for solicitation purposes, thereby invading the privacy of said Plaintiff and the Class members after Plaintiff and Class members requested to no longer receive text messages from the Defendant, thereby causing annoyance to Plaintiff and the Class and also invading the privacy of Plaintiff and the Class. Plaintiff and the Class members were damaged thereby.

90. <u>Numerosity:</u> Upon information and belief, the members of the Class are so numerous that joinder of all of them is impracticable. The exact number of the members of the Class is unknown to Plaintiff at this time, and can (and will) be determined through appropriate discovery. However, given that, on information and belief, Defendant texted thousands of Class members nationwide during the Class Period, it is reasonable to presume that the members of the Class are so numerous

KAZEROUNI LAW GROUP, APC

that joinder of all members is impracticable. The disposition of the claims in a class action will provide substantial benefits to the parties and the Court.

91. Ascertainability: The members of the Class are ascertainable because the Class is defined by reference to objective criteria. In addition, the members of the Class are identifiable in that, upon information and belief, their cellular telephone numbers, names and addresses can be identified in business records maintained by Defendant and/or by third parties.

92. Typicality: As a person who sent a cease communication request to Defendant and who continued to receive multiple telephone and/or text solicitations from Defendant within a 12-month period, Plaintiff is asserting claims that are typical of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class.

93. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff has had to suffer the burden and invasion of privacy of receiving unsolicited text messages to his cellular telephone from Defendant after making a request to Defendant to not receive future text messages. Thus, his injuries are typical to Class Members.

94. Plaintiff's claims, and the claims of the members of the Class, originate from the same conduct, practice and procedure on the part of Defendant.

95. Plaintiff's claims are based on the same theories, as are the claims of the members of the Class.

96. Plaintiff and Class Members were harmed by the acts of Defendant in at least the following ways: Defendant harassed Plaintiff and Class Members by illegally texting their cellular phones without prior express consent after making a request to Defendant to not receive future text messages. Plaintiff and the Class were damaged thereby.

97. Adequacy: Plaintiff is qualified to and will fairly and adequately protect

the interests of the members of the Class with whom he is similarly situated, as demonstrated herein. Plaintiff acknowledges that he has an obligation to make known to the Court any relationships, conflicts, or differences with any Class Member. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Class. Plaintiff will vigorously pursue the claims of the members of the Class. Plaintiff has retained counsel experienced and competent in class action litigation. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling clams involving consumer actions and violations of the TCPA. Plaintiff's counsel will assert, protect and otherwise represent the members of the Class. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

98. Predominance: The questions of law and fact common to the members of the Class predominate over questions that may affect individual members of the Class. The elements of the legal claims brought by Plaintiff and Class Members are capable of proof at trial through evidence that is common to the Class rather than individual to its members.

99. Commonality: There are common questions of law and fact as to all members of the Class, including but not limited to the following:

a) What is Defendant's conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing text messages;

b) Whether, within the four years prior to the filing of this Complaint, Defendant or its agents sent more than one text message solicitation to Plaintiff and to members of the Class who requested that Defendant stop sending such text messages to their telephone



KAZEROUNI LAW GROUP, APC

numbers;

c) Whether Defendant's conduct violated the TCPA;

d) Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and

e) Whether Defendant should be enjoined from engaging in such conduct in the future.

100. Superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this matter because:

a) If brought and prosecuted individually, the claims of the members of the Class would require proof of the same material and substantive facts.

b) The pursuit of separate actions by individual members of the Class would, as a practical matter, be dispositive of the interests of other members of the Class, and could substantially impair or impede their ability to protect their interests.

c) The pursuit of separate actions by individual members of the Class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

d) These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Class.

e) The damages suffered by each individual member of the Class may be relatively modest, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Class to redress the wrongs done to them.

f) Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore



KAZEROUNI LAW GROUP, APC

have no effective remedy at law.

g) The pursuit of Plaintiff's claims, and the claims of the members of the Class, in one forum will achieve efficiency and promote judicial economy.

h) There will be little difficulty in the management of this action as a class action. Defendant has acted or refused to act on grounds generally applicable to the members of the Class, making final declaratory or injunctive relief appropriate.

101. Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

102. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with applicable law. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

103. Plaintiff and the Class members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful conduct.

104. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Plaintiff and the Class members and it expressly is not intended to request any recovery for personal injury and claims related thereto.

KAZEROUNI LAW GROUP, APC

**COUNT I**
**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. §§ 227, *et seq.***

105. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

106. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

107. Under 47 C.F.R. § 64.1200(c), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.

108. Under 47 C.F.R. § 64.1200(e) the rules set forth in under 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wires telephone numbers.

> (e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.

109. Plaintiff and Class members made requests to Defendant not to receive telemarketing text messages from Defendant.

110. Defendant failed to honor Plaintiff and the Class members' requests not to receive such telemarketing text messages from Defendant.

111. Upon information and belief, Defendant has not instituted procedures

for maintaining a list of persons, including but not limited to Plaintiff, who requested not to receive telemarketing text messages from Defendant or on their behalf, pursuant to 47 C.F.R. § 64.1200(c).

112. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and other similarly situated Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5).

113. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and other similarly situated Class members are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5), Defendant violated 47 U.S.C. § 227(c)(5).

114. Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

115. Because Plaintiff and the Class members received more than one text in a 12-month period sent by or on behalf of Defendant in violation of 47 C.F.R. § 64.1300(c).

116. Plaintiff and Class members also suffered damages in the form of invasion of privacy.

117. Plaintiff also seeks an award of attorney's fees and cost on behalf of Plaintiff and the Class.

118. Plaintiff reserves the right to redefine the Class, and to add and redefine any additional subclass as appropriate based on discovery and specific theories of liability.

119. The Class that Plaintiff seeks to represent contains numerous members and is ascertainable including, without limitation, by using Defendant's records to determine the size of the Class and to determine the identities of individual Class members.

KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, prays for the following relief:

- That this action be certified as a Class Action, establishing the Class, and any sub-class(es) that the Court may deem appropriate;
- Appointing Plaintiff as the representative of the Class;
- Appointing the law firms representing Plaintiff as Class Counsel;
- Pre-judgment and post-judgment interest;
- Costs of suit;
- An award of reasonable attorneys' fees and costs to Plaintiff and the Class, pursuant to the common fund doctrine and, *inter alia,* California Code of Civil Procedure § 1021.5;

### NEGLIGENT VIOLATIONS OF THE TCPA
### 47 U.S.C. §§ 227, *ET SEQ.*

- An award of $500.00 in statutory damages to Plaintiff and each member of the Class for each and every negligent violation of 47 U.S.C. § 227(c) by Defendant, pursuant to 47 U.S.C. § 227(c)(5)(B);
- An order providing injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(c)(5)(A);
- Any other further relief that the court may deem just and proper.

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA
### 47 U.S.C. §§ 227, *ET SEQ.*

- An award of $1,500.00 in statutory damages to Plaintiff and each member of the Class for each and every knowing and/or willful violation of 47 U.S.C. § 227(c) by Defendant, pursuant to 47 U.S.C. § 227(c)(5)(C);
- An order providing injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(c)(5)(A).
- Any other further relief that the court may deem just and proper.

KAZEROUNI LAW GROUP, APC

**JURY DEMAND**

120. Plaintiff is entitled to, and demands, a trial by jury on all issues so triable.

Dated: June 18, 2026

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: *s/ Mona Amini*
David J. McGlothlin, Esq.
Mona Amini, Esq.
Ashley LaPointe, Esq.
*Attorneys for Plaintiff*